# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 5, 2014

## MAURICE WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-06805     W. Mark Ward, Judge**

---

**No. W2013-00883-CCA-R3-PC  - Filed April 11, 2014**

---

The petitioner, Maurice Williams, appeals from the denial of his petition for post-conviction relief from his 2007 Shelby County Criminal Court jury convictions of carjacking and aggravated robbery, claiming that he was deprived of the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Robert C. Brooks, Memphis, Tennessee (on appeal); and Valerie Corder, Memphis, Tennessee (at trial), for the appellant, Maurice Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Shelby County Criminal Court jury convicted the petitioner of carjacking and aggravated robbery for his role in the August 16, 2004 taking of four pillowcases full of cigarettes from a Mapco convenience market at gunpoint and the subsequent carjacking of Charles Mestemacher in the parking lot of the Mapco. The facts, as summarized by this court on direct appeal, established that while the co-defendant, Vario Talley, distracted the store clerk by redeeming lottery tickets, the petitioner went into the storeroom and began "putting cartons of cigarettes into pillowcases." *State v. Maurice Williams*, No. W2008-01136-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, Jan. 20, 2010), *perm. app. denied* (Tenn.

June 17, 2010). When the clerk asked the petitioner what he was doing, the petitioner pointed a gun at her and threatened to shoot her. The two men then fled toward the door with four pillowcases filled with cigarettes, and the store clerk gave chase and attempted unsuccessfully to retrieve one of the pillowcases. *See id.* In the parking lot, "an African-American man ran out of the Mapco store and told [Mr.] Mestemacher to get out of his truck or he would be shot." *Id.*, slip op. at 3. Fingerprint evidence connected the petitioner to the cigarette cartons that remained in the storeroom, and the jury viewed video surveillance recordings of the incident.

This court affirmed the petitioner's convictions and the accompanying 53-year effective sentence. *See id.*, slip op. at 8. The petitioner then filed a timely petition for post-conviction relief, claiming, among other things, that he was deprived of the effective assistance of counsel at trial. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, adding new allegations to his claim of ineffective assistance of counsel.

At the January 23, 2013 evidentiary hearing, the petitioner testified that he believed his counsel performed deficiently by failing to request a special jury instruction on reasonable doubt, which, he claimed, would have better supported his theory of defense. He also complained that counsel failed to adequately investigate the case and that counsel specifically should have "investigated" the store clerk and an individual named Diablo Rogers, who the petitioner claimed was originally arrested for the offenses along with the petitioner and the co-defendant. He said that both the clerk and Mr. Rogers could have testified "that it wasn't a gun involved." The petitioner admitted, however, that Mr. Rogers left the Mapco before the offenses occurred.

The petitioner testified that he and trial counsel never discussed the possibility of presenting expert witness testimony on any issue. He also complained that trial counsel failed to mount an adequate challenge to the audio portion of the Mapco surveillance video on grounds that it was inaudible. The petitioner stated that counsel should have moved to sever his trial from that of the co-defendant.

The petitioner testified that counsel negotiated a plea agreement that included a 10-year sentence but failed until the day of the plea submission hearing to inform the petitioner that his testifying against the co-defendant was one of the terms of the agreement. He said that counsel's failure to alert him to the term caused him to distrust counsel and to reject the plea agreement.

The petitioner asserted that trial counsel failed to interview any of the State's witnesses in advance of trial. He said that counsel also failed to interview any of the

petitioner's family and friends for mitigation proof to present at the sentencing hearing. He complained that counsel should have alerted the trial court that his previous conviction of attempted aggravated assault "was an auto accident." He said that it was his belief that counsel misunderstood the law about sentencing, particularly the application of the enhancement and mitigating factors.

During cross-examination, the petitioner acknowledged that he did not complain about his counsel's performance before or during the trial. After being shown the transcript of the jury instructions, the petitioner conceded that the trial court properly instructed the jury regarding reasonable doubt. He also admitted that the transcript showed that his counsel asked for a special instruction on reasonable doubt and that the trial court denied the request. The petitioner acknowledged that the defense strategy was to establish that the offense inside the Mapco was a theft rather than an aggravated robbery and that counsel did his best to present this theory to the jury.

The petitioner admitted that he and the co-defendant, along with Mr. Rogers, worked together to steal the cigarettes. He denied having a weapon. The petitioner acknowledged that because he admitted stealing the cigarettes, counsel's hiring a fingerprint expert would have been fruitless. Similarly, the petitioner conceded that because it was the theory of the defense that the store clerk was not rendered unconscious at any point during the offense, counsel's hiring an expert in brain injury would not have helped his defense.

The petitioner conceded that trial counsel negotiated the plea agreement that included a 10-year sentence and that counsel urged the petitioner to accept the agreement. He said that counsel warned him that he would be convicted at trial and that the agreement was his best chance at a reduced sentence.

The petitioner acknowledged that trial counsel tried to use an error in the offense date contained in the indictment to the petitioner's advantage, but he was unsuccessful. He also conceded that he had pleaded guilty to an attempted aggravated assault that was the result of a car accident.

During redirect examination, the petitioner reversed course and claimed that it was not the defense strategy that he had committed a theft but that the strategy was that the petitioner had not committed any crime. Thus, he claimed that a fingerprint expert would have assisted his defense.

During recross-examination, the petitioner again changed his testimony with regard to the defense trial theory, claiming that counsel had no theory. He then said that it was, in fact, his theory of defense that he was guilty of theft but not guilty of aggravated

robbery. He admitted that he was at the Mapco and that he stole the cigarettes, but he maintained that he did not possess a weapon. The petitioner acknowledged that the jury saw and heard the video surveillance recording and was permitted to determine what the video showed.

The petitioner called counsel as a witness at the hearing, but post-conviction counsel declared that the petitioner would not ask any questions of counsel and would, instead, rely upon the petitioner's own testimony. The State, however, chose to question counsel.

Trial counsel testified that with regard to the plea agreement, the petitioner engaged in what the trial court deemed a "game of cat and mouse," whereby the petitioner would indicate an intent to accept a plea offer but renege at the last minute. At one point, after counsel succeeded in getting the State to reduce its agreed sentence offer from 20 years to 12 years, the petitioner signed the paperwork, and both he and the co-defendant agreed to plead guilty. Once the parties arrived in court, however, the co-defendant refused to plead guilty unless the co-defendant's counsel "went to the store and bought him some Newports." When the co-defendant's counsel refused that request, the trial judge "said I'm not taking any guilty plea paperwork from these two guys, we're going to trial." Counsel recalled that "[e]arly on" he told the petitioner that agreeing to testify against the co-defendant "was his best option," but the petitioner "did not want to do that."

Counsel testified that after it became clear that the petitioner would not plead guilty, he began a more thorough investigation of the case, traveling to the Mapco to take photographs and interview an employee regarding the "set up." He said that the clerk victimized during the offenses had been transferred to a different store. Counsel said that he telephoned the "director of Memphis Mapcos" in an attempt to locate her, but the director refused to tell counsel "where she had been relocated to." He said that he was unable to locate the store clerk prior to trial.

Counsel stated that the petitioner told him "from the beginning that this was not a robbery, this was just a theft of property." He said that this revelation was consistent with the statement that the petitioner gave to police officers following his arrest. At one point, he said, the petitioner asked him "to convey an offer of two counts of theft" to the State, saying that "he'd be willing to serve each count consecutively to one another." Counsel testified that the most viable theory of defense was that the petitioner had committed a theft but not an aggravated robbery.

Counsel said that the petitioner was readily identifiable from the video recording and from several still photographs taken from the surveillance video. Counsel

recalled that the petitioner fled the scene in Mr. Mestemacher's truck and absconded to Missouri for two years before he was arrested. He described the video recording as "the best video" he had seen at the time. He said, "It's a digital video, it's crystal clear. The sound is excellent on it." Counsel said that he did not believe that any portion of the video was inaudible. He testified that the co-defendant can clearly be heard to ask the petitioner where the gun is and then to shout "shoot him, shoot him, shoot him." Counsel said that he "broke [the video] down by the second. Everything that was said by second in the entire video."

Counsel testified that he visited the petitioner "in the jail on numerous times" and that he "met with him in lockup here in the courtroom also, every court date." Counsel said that he also attempted to interview Mr. Rogers. He recalled that he learned that Mr. Rogers was scheduled for a preliminary hearing on unrelated charges, so he went to court to speak with Mr. Rogers and his appointed counsel. Mr. Rogers failed to appear for that hearing, and his counsel "did not have a valid phone number" for Mr. Rogers. A warrant was issued for Mr. Rogers' arrest, and counsel testified that he had not previously had success in persuading wanted individuals to come to court to testify on his client's behalf. Additionally, he said that Mr. Rogers had prior convictions of theft and aggravated burglary that could have been used to impeach his credibility at trial.

Following the State's examination of the witness, post-conviction counsel elected to question counsel. Counsel said that Mr. Rogers pleaded guilty to theft in relation to this case "in 2004 and 2005" and that the petitioner was not arrested until 2006. By the time counsel attempted to locate him, Mr. Rogers was no longer in custody. Counsel stated that he obtained the video recording as part of the discovery materials and that he first viewed it in October 2006. He said that he showed it to the petitioner in March 2007, eight months prior to the trial. Counsel recalled that he did not have a method to play the video for the petitioner at the jail, so he asked the trial court for a special setting so that the petitioner could view the video in the courtroom. Counsel said that he did not argue that the video was inaudible but did argue that "there was an issue as to the interpretation of what was said." He said that his objection was not to the video but to the State's using equipment designed to enhance that portion of the video where several voices are heard at the same time. Counsel said that it was his opinion that the video supported the theory of defense.

Counsel testified that the petitioner's sentencing hearing lasted no longer than one and one half hours and that he did not call any witnesses. He said that the petitioner indicated that he did not wish to speak at the hearing and that the petitioner did not alert him to any potential witnesses for the sentencing hearing.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a written order, the court denied post-conviction relief, ruling that the

petitioner had failed to establish his claims of ineffective assistance of counsel by clear and convincing evidence. The court concluded that counsel adequately investigated the petitioner's case and developed a sound trial strategy based upon the evidence available to him. The court noted that the petitioner's claims that counsel should have presented the testimony of Mr. Rogers and various expert witnesses failed because the petitioner failed to present "a single witness nor a single piece of evidence" at the evidentiary hearing regarding what the testimony of these witnesses might have been at trial. The post-conviction court also concluded that counsel did not perform deficiently by failing to object to the video recording on grounds that portions of it were inaudible because "[t]here was no basis upon which an objection would have been sustained. It was up to the jury to determine whether the audio was audible." The court determined that the petitioner failed to establish deficient performance with regard to counsel's cross-examination of the store clerk by failing to call the clerk as a witness at the evidentiary hearing. The post-conviction court ruled that the petitioner failed to establish that counsel performed deficiently by failing to hire an investigator because the petitioner did not present any witness or piece of potential evidence that might have been uncovered by an investigator. The court concluded that the petitioner's claim that counsel failed to adequately convey the 10-year plea offer was "not supported by the facts." The court also determined that the petitioner failed to establish that counsel performed deficiently by failing to argue at the sentencing hearing that the petitioner's prior conviction related only to an automobile accident because the petitioner failed to present any such proof in the evidentiary hearing. Finally, the court ruled that the petitioner's claim that counsel failed to request a reasonable doubt instruction was "not factually true."

In this timely appeal, the petitioner contends that "the post-conviction court's conclusion that [the p]etitioner failed to prove ineffective assistance of counsel, or any other violation which would warrant post-conviction relief, is entirely erroneous." The petitioner does not, however, specify exactly the error in the trial court's ruling. The State asserts that the court properly denied post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

-6-

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the decision of the post-conviction court denying post-conviction relief because the petitioner failed to establish any of his claims by clear and convincing evidence.

Although the petitioner claimed that trial counsel failed to conduct any investigation in his case, the post-conviction court accredited counsel's testimony that he conducted a thorough investigation. The petitioner claimed that a better investigation would have included interviews with Mr. Rogers and the Mapco store clerk, but the petitioner failed to present either witness at the evidentiary hearing. As such, we cannot speculate what either witness might have testified to at trial. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). Moreover, counsel testified that he attempted to interview both witnesses, but neither could be located.

Similarly, although the petitioner claimed that counsel should have employed the services of a private investigator, fingerprint expert, eyewitness identification expert, and an audiologist, he failed to present any of these witnesses at the evidentiary hearing to establish how their testimony might have helped in his defense. With regard to the employment of a private investigator, the petitioner failed to allege any fact or witness that an investigator might have uncovered that was not uncovered by counsel himself during his

investigation of the case. With regard to the fingerprint expert, the petitioner acknowledged after his arrest and at the evidentiary hearing that he stole the cigarettes as alleged and that his only defense to the charge of aggravated robbery was that he was not armed. Accordingly, employment of a fingerprint expert would not have availed him anything at trial. The petitioner likewise failed to present an expert in eyewitness identification at the evidentiary hearing to establish how the identifications of the petitioner might have been challenged at trial. In addition, the record establishes that the jury watched the video recording of surveillance from the Mapco and could easily have identified the petitioner as the perpetrator from that recording. Moreover, it bears repeating that the petitioner did not at any point suggest that he had been misidentified and instead freely admitted that he stole the cigarettes from the Mapco. Finally, the petitioner failed to present an audiologist at the evidentiary hearing to establish how such an expert might have assisted the jury in listening to the video recording in this case. The post-conviction court properly found that the jury was the appropriate arbiter of the contents of the recording.

The petitioner's claims that counsel failed to request a reasonable doubt instruction and failed to adequately explain the plea offer to the petitioner were not borne out by the record. Indeed, with regard to the plea offer, the petitioner admitted that it was his decision to reject the offer, which would have resulted in his serving a total effective sentence of 10 years instead of the 53 years imposed for his convictions after the trial.

Stated succinctly, the record supports the post-conviction court's conclusion that the petitioner failed to establish any of his claims of ineffective assistance. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE